F I L E D
**United States Court of Appeals
Tenth Circuit**

**DEC 24 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHARLES ELLIOTT HARRIS, JR.,

Plaintiff-Appellant,

v.

NICKIE ROCCHIO, Officer;
ROBERT BUSETTI, Lt.,

Defendants-Appellees.

Case No. 97-1020
(D.C. 95-M-1115)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **HENRY**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Pro se plaintiff-appellant Charles Elliot Harris, Jr. appeals the district court's grant of summary judgment in favor of Mr. Rocchio[1] on Mr. Harris's 42 U.S.C. § 1983 claim. We affirm because, accepting the facts as alleged by Mr. Harris, Officer Rocchio's strip search of Mr. Harris was reasonable and was not so harmful as to be cruel and unusual.

## I. BACKGROUND

Officer Rocchio went with Officer Berner, who is not a defendant to this action, to search Mr. Harris's cell for a Notice of COPD Charge[2] ("Charge") which had erroneously been served on Mr. Harris.[3] See Rec. vol. I, doc. 23,

---

[1] The district court also determined that several minor claims presented by Mr. Harris did not raise constitutional questions and granted summary judgment in favor of Lt. Busetti on Mr. Harris's 42 U.S.C. § 1983 claim that Lt. Busetti assaulted him. Mr. Harris only raises the judgment in favor of Officer Rocchio in his brief to this court, see Aplt's Opening Br. at ¶ 3 ("the plaintiff is alleging the trial court erred when it dismissed the civil action based upon the defendant's second motion for summary judgment [the motion in favor of Officer Rocchio]"). Therefore, he has waived any challenge to the other decisions of the district court, see State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994), and we will only address the claim against Officer Rocchio.

[2] A Notice of COPD Charge is a document given an inmate to inform him that he is being formally charged by the prison with violating a prison rule.

[3] Officer Rocchio's affidavits state that the officers went to Mr. Harris's cell to perform a "routine shakedown." Rec. vol. I, doc. 23 (Rocchio Aff. of 10/22/95 ¶ 4); id. at doc. 49 (Rocchio Aff. of 6/21/96 ¶ 4). Although it is unclear whether a search for a Charge could be considered part of a "routine shakedown," this lack of clarity is not enough to raise a factual dispute.

2

Busetti Aff. ¶ 13; id. at doc. 49, Berner Aff. ¶ 3;  Aplt's Opening Br. ¶ 61.  In accordance with cell search procedure, Officer Berner instructed Mr. Harris to remove all items from his pocket, see Rec. vol. I, doc. 49, Berner Aff. ¶ 3, but Mr. Harris twice refused. See id. at doc. 49, Berner Aff ¶ 3 and Rocchio Aff. of 6/21/96 ¶ 4; id. at doc. 23, Rocchio Aff. of 10/22/95 ¶ 4.  After the second refusal, Officer Berner told Mr. Harris he would be strip searched.  See id. at doc. 49, Berner Aff. ¶ 4 and Rocchio Aff. of 6/21/96  ¶ 4; id. at doc. 23, Rocchio Aff. of 10/22/95 ¶ 4.  Mr. Harris still refused to empty his pocket, and Officer Berner commenced the strip search with Officer Rocchio watching, in accordance with regulations.  See id. at doc. 49, Berner Aff. ¶ 4 and Rocchio Aff. of 6/21/96 ¶ 4; id. at doc. 23, Rocchio Aff. of 10/22/95 ¶ 4.  Officer Berner told Mr. Harris to remove his clothing and then directed him "to move his genitals, bend over, spread his buttocks, and cough."  See id. at doc. 49, Berner Aff. ¶ 5.  The entire strip search took less than five minutes, during which time Officer Rocchio searched the clothing given him, watched to ensure Mr. Harris did not attack either officer, and "backed up" Officer Berner.  See id. at doc. 49, Berner Aff. ¶¶ 5-6 and Rocchio Aff. of 6/21/96 ¶ 5.

Neither officer stated that they in fact found anything during the strip search, but Lieutenant Busetti's affidavit stated that the Charge was retrieved from Mr. Harris's trash can after his cell was searched.  See id. at doc. 23, Busetti

Aff. ¶ 13. Mr. Harris hotly contests Lieutenant Busetti's contention that the Charge was retrieved from his trash can:

> Busetti alleges he found the write-up they were looking for in the trash can. If given the chance Harris would prove he left this writeup with another inmate to review and they searched the plaintiff's room at the exact same time this other inmate had the writeup in his possession. The other inmate would submit an affidavit to this effect and the plaintiff as well . . . . The plaintiff states he also still has in his possession the writeup the authorities were looking for and has . . . attached it to this opening brief.

Aplt's Opening Br. ¶ 61. In other hand-written documents submitted with his appeal, Mr. Harris contends that the strip search occurred after the officers searched his cell and found nothing. See Rec. doc. 29 at originals of lined, hand-written sheets ¶ 10. Additionally, attached to Mr. Harris's brief is a Charge dated August 15, 1994, the day of the strip search, which has an incorrect date in box seven. See Aplt's Opening Br. Ex. A. The reason the prison wanted to retrieve the Charge from Mr. Harris was that it had an incorrect date. Therefore, this could in fact be the very Charge the officers were searching for, and, given Lt. Busetti's contradictory statements, we seem to be presented with a genuine issue of material fact as to whether of not the Charge was in Mr. Harris's cell. However, for the purposes of his appeal, we will resolve the factual dispute in Mr. Harris's favor and accept his contention that the Charge was not in his cell and was not found in his trash can because even if he can prove the facts as he has alleged them, the strip search was reasonable.

4

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. Thus, we apply the same standard the district court applied under Fed. R. Civ. P. 56(c). See Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir. 1991). We are required to view the record in the light most favorable to the party opposing summary judgment. See Deepwater Inv., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).

## III. DISCUSSION

As an initial matter, we note that the appellees contend that we should not consider Mr. Harris's appeal because it was filed out of time. However, Mr. Harris filed a "Motion for Registry of Actions" in the district court within the time allotted to file an appeal. It is appropriate to consider this to be the functional equivalent of a notice of appeal, see Smith v. Barry, 502 U.S. 244, 248-49 (1992) ("If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal."), and we do so.

5

Although Mr. Harris's complaint did not specifically allege the appropriate constitutional provisions under which he was staking his claims, the magistrate judge correctly read Mr. Harris's complaint liberally, see Haines v. Kerner, 404 U.S. 519, 520 (1972), and recognized that Mr. Harris's arguments and facts alleged in his strip search implicate Fourth Amendment privacy interests and Eighth Amendment Cruel and Unusual Punishment concerns. We will discuss each in turn.

A.    Fourth Amendment

Prisoners have a limited constitutional right to bodily privacy, including the right to be free from unreasonable strip searches. See Bell v. Wolfish, 441 U.S. 520, 558 (1979). When examining whether a prison strip search was unreasonable, the Supreme Court has stated that:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Id. at 559.

Applying this test to the facts supplied, we conclude that the strip search conducted by Officer Rocchio was reasonable as a matter of law, and, therefore,

6

that the grant of summary judgment in Officer Rocchio's behalf was proper. As to the scope of the intrusion, "[t]here can be no doubt that a strip search is an invasion of personal rights of the first magnitude." Chapman v. Nichols, 989 F.2d 393, 395 (10th Cir. 1993). However, Officers Berner and Rocchio were validly seeking the erroneous Charge, which had been labeled by the prison as unauthorized property and which, according to the facts as Mr. Harris would have us believe them, they could not find anywhere else in Mr. Harris's cell. Mr. Harris knew the whereabouts of the Charge they were looking for but refused to tell them it was with another prisoner. Instead, Mr. Harris disobeyed their direct orders while they were trying to locate the document. Therefore, Mr. Harris himself created the justification for the strip search. By purposefully subjecting himself to a strip search, which he could have avoided by telling the officers where they could find the Charge, Mr. Harris essentially consented to the search and cannot be heard to complain now. We will not reward him for becoming his own victim.

Although prison guards should use strip searches as a last resort because of their invasive and degrading nature, it is clear that this search was not "devoid of penalogical merit and imposed simply to inflict pain." Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995); and see Hudson v. Palmer, 468 U.S. 517, 530 (noting

7

that a prisoner has a constitutional remedy for "calculated harassment unrelated to prison needs").  The strip search was reasonable under the Fourth Amendment.

B.    Eighth Amendment

Mr. Harris does not allege that he suffered any physical pain from the strip search.  He does claim that the officers, in response to a query about what they were doing, stated they were "looking up Harris' ass hole [sic.]."  Aplt's Opening Br. at ¶ 20.  Insensitive words do not amount to an Eighth Amendment violation.  See Adkins v. Rodriguez, 59 F.3d 1034, 1037-38 (10th Cir. 1995)); see also Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (holding that verbal harassment in prison is not sufficient to state a constitutional deprivation under § 1983).  For this reason, we agree with the district court that the strip search was not conducted in a manner which was so harmful as to be cruel and unusual in violation of Mr. Harris's Eighth Amendment rights.

C.    Conflicting Magistrate Recommendations

One final non-substantive point needs to be raised because Mr. Harris makes much of it in his appeal.  With the defendants' first motion for summary judgment, Officer Rocchio filed an affidavit in which he admitted participating in the strip search of Mr. Harris.  See Rec. vol. I, doc. 23, Rocchio Aff. of 10/22/95

¶ 4 ("I was the observing officer in a strip search of the Plaintiff Harris. The actual search was performed by Officer Berner."). However, in his Recommendation, the magistrate judge concluded that Officer Rocchio's affidavit denied that the strip search occurred. See Rec. vol. I, doc. 30, at 5 ("[Mr. Harris] claims that [the strip search] occurred and was done to humiliate him. Defendant Rocchio claims that it did not occur at all. . . . [T]here is a dispute of fact that cannot be resolved through a motion for summary judgment.") (emphasis added). Faced with what he erroneously believed were two directly contradictory statements of fact regarding the strip search's occurrence, the magistrate judge concluded that there was a genuine dispute as to a material fact. The district court entered an order in accordance with the magistrate's recommendations, leaving Officer Rocchio as the sole defendant and the strip search claim as the sole claim.

Officer Rocchio responded to the district court's order by filing his second motion to dismiss and two affidavits: his second affidavit (almost identical to his first) and an affidavit from Officer Berner. Both reiterated that the officers had strip searched Mr. Harris. See Rec. vol. I, doc. 49, Rocchio Aff. of 6/21/96 ¶ 4 and Berner Aff. ¶ 4. After reviewing this material, the magistrate judge issued his second recommendation determining that there was no longer a factual dispute and recommending a dismissal of Mr. Harris's final claim. The district court

accepted the magistrate judge's recommendations and dismissed the claim with prejudice.

On appeal, Mr. Harris makes much of the fact that the magistrate judge initially concluded that there was a factual dispute and then, without having any new facts or law before him, changed his mind. Suffice it to say that the magistrate judge made a mistake by misreading Officer Rocchio's first affidavit and that there never was a factual dispute as to whether a strip search had, in fact, occurred. When the magistrate judge recognized his mistake, he rectified it by holding that there were no genuine issues of material fact and granting summary judgment in favor of Officer Rocchio. Although the magistrate judge could have been more explicit in confessing his error, it was obvious upon a review of the record, and, regardless, it does not present a ground for appeal.

## III.  CONCLUSION

We affirm.  The mandate shall issue forthwith.

Entered for the Court,


Robert H. Henry
Circuit Judge